IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL W. MABE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12-CV-277 |
| | ) | |
| KEITH WHITENER, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

     Petitioner Michael W. Mabe is a prisoner of the State of North Carolina. He has filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus alleging that his state court convictions were unconstitutionally obtained, based on claims that the trial court denied him his right to represent himself, erred in instructing the jury, and unfairly sentenced him, and that his trial counsel engaged in six different instances of ineffective assistance. (Doc. 1.) Respondents have filed a motion for summary judgment. (Doc. 8.) The Court concludes that the state court decisions denying Mr. Mabe relief were neither contrary to, nor involved an unreasonable application of, clearly established federal law, and that Respondents' motion should be granted.

## PROCEDURAL BACKGROUND

     In 2009, in Forsyth County Superior Court, Mr. Mabe was convicted following a jury trial of first-degree burglary, larceny of a motor vehicle, communicating threats, interfering with emergency communication, and two counts of assault on a female. (Doc. 10-2 at 3, 39-41.) Mr. Mabe pled guilty to habitual misdemeanor assault status. (*Id.* at 3.) Mr. Mabe was sentenced to four consecutive terms of varying lengths, resulting in a minimum sentence of just over thirteen

years' imprisonment. (*Id.* at 44-51.) On appeal, the North Carolina Court of Appeals found no error. *State v. Mabe*, 205 N.C. App. 322, 697 S.E.2d 524, 2010 WL 2652254 (July 6, 2010) (disposition published in reporter table; opinion unpublished).

In 2010, Mr. Mabe filed a pro se motion for appropriate relief ("MAR") in Forsyth County Superior Court. (Doc. 10-9.) The MAR was denied in 2011. (Doc. 10-11.) The North Carolina Court of Appeals denied Mr. Mabe's subsequent petition for writ of certiorari. (Docs. 10-12, 10-13.) The North Carolina Supreme Court then dismissed Mr. Mabe's request for review of constitutional issues. (Docs. 10-14, 10-15.) Mr. Mabe filed a second pro se MAR in Forsyth County Superior Court in November 2011; that motion is still pending. (Doc. 10-16.)

Mr. Mabe filed this 28 U.S.C. § 2254 petition in March 2012. (Doc. 1.)

**FACTS**

The North Carolina Court of Appeals summarized the facts underlying Mr. Mabe's convictions as follows:

> Defendant's former girlfriend Laura Willard ("Willard") testified that on 18 November 2008, she drove defendant to work as she usually did, because defendant did not have a car. At around lunchtime, Willard broke up with defendant over the phone. Defendant was upset and concerned about how he would get home from work. Later that evening at around 11:00 p.m., defendant arrived at Willard's mother's home . . . . Defendant kicked in the bottom portion of the kitchen door and crawled into the home. . . . [D]efendant . . . proceeded to beat Willard. Defendant also struck Willard's mother and . . . went into the kitchen. Willard heard defendant rummaging through the kitchen and left the bathroom to see what defendant was doing. As she left the bathroom, Willard saw the contents of her purse dumped out on the kitchen table and floor. When Willard arrived in the kitchen, defendant screamed at her asking where her car keys were, to which Willard replied that she did not know. Willard then saw defendant crawl outside through the bottom part of the kitchen door and heard her car start and pull out of the driveway.
>
> Early the next morning, at around 3:00 a.m., defendant was pulled over in Willard's car by Deputy D.H. Tubbs.

*Mabe*, 2010 WL 2652254, at *1.

**CLAIMS FOR RELIEF**

Mr. Mabe alleges the following grounds for relief in his petition: (1) that the trial court denied him his constitutional right to represent himself; (2) that the trial court denied his requested jury instruction on felony auto theft, which is a lesser-included offense of larceny of a motor vehicle; (3) that his prior convictions older than ten years were erroneously used to calculated his sentence after the State waived the use of those convictions; and (4) that he received ineffective assistance of counsel. (Doc. 1 at 5-10.)

The Court may grant federal habeas relief only if Mr. Mabe shows that the relevant state court decision was contrary to or involved an unreasonable application of federal law then clearly established in the holdings of the Supreme Court, or that the relevant state court decision was based on an unreasonable determination of the facts in light of the record. 28 U.S.C. § 2254(d); *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 785 (2011). The state court's factual findings are entitled to deference, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

1. **Right to Represent Himself**

Mr. Mabe first asserts that the state trial court denied his constitutional right to represent himself. Mr. Mabe raised this claim before the North Carolina Court of Appeals on direct appeal, where it was explicitly addressed and rejected. *Mabe*, 2010 WL 2652254, at *2-3.

The North Carolina Court of Appeals' factual summary related to this claim follows:

> At [defendant's] 30 June 2009 trial, Willard testified on *voir dire* regarding prior incidents of assault by defendant. Defendant interrupted Willard's testimony twice. During both interruptions, defendant expressed his desire to call witnesses, specifically his brother and his brother's niece, whom Willard had identified during her *voir dire* testimony. During the second interruption, defendant stated, "I would like my counsel to withdraw from this case. I would like to continue to call my witnesses." Defendant's request was denied.

> . . .
>
> [D]efendant interrupted Willard's *voir dire* testimony regarding prior incidents of assault:
>
>> The State: Where did he strike you?
>>
>> DEFENDANT: My brother's niece–
>>
>> BAILIFF: Sir–
>>
>> THE COURT: That's the second time. I've warned you now. The third time is going to be more stringent methods used to keep you quiet. Do you understand?
>>
>> DEFENDANT: I apologize, sir. I would like my counsel to withdraw from this case. I would like to continue to call my witnesses. These things that do not exist in this case are permitted to be brought up, the assault on my niece that she done to being drunk, knocking her clocks off the wall, unable to drive her call, all this stuff, if we're going to fight that case, she needs to go take a charge out for that case, and we need to do that in another thing. That's just my opinion, Your Honor. I apologize for inconveniencing the Court, I really do.
>>
>> THE COURT: Very well, your motion is denied. Move along.

*Id.* at *1, *3 (alterations omitted). In rejecting Mr. Mabe's argument, the Court of Appeals held:

> Defendant's statements do not clearly and unequivocally express a desire to proceed *pro se*. Defendant's statement—"I would like my counsel to withdraw"—evinces only the "desire not to be represented by his counsel," not the "intention to represent himself." [*State v.*] *White*, 349 N.C. [535,] 562, 508 S.E.2d [253,] 270 [(1998)] (concluding that the defendant's statement that he "would like for his counsel to be released from his case" did not amount to an expression of intent to proceed *pro se*). Defendant's statement that he "would like to continue to call his witnesses" was based upon his mistaken understanding that Willard's *voir dire* testimony would be admitted as evidence. The court-appointed counsel whom defendant contends he wished to dismiss shortly thereafter convinced the trial court to exclude Willard's *voir dire* regarding the prior assaults. Defendant continued the rest of the trial with court-appointed counsel and never again raised a request to dismiss his counsel or represent himself. Based upon the colloquy set forth above, defendant's statements do not unequivocally express a desire to proceed *pro se*.

*Id.* at *3 (alterations omitted).

Implicit in a criminal defendant's constitutional right to counsel under the Sixth Amendment is a right to self-representation. *Faretta v. California*, 422 U.S. 806, 818-32 (1975). A defendant who invokes his right to self-representation necessarily relinquishes many of the benefits associated with the right to counsel, and he therefore must "knowingly and intelligently forgo those relinquished benefits." *Id.* at 835 (internal quotation marks omitted); *see also United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000) (requiring "knowing, intelligent and voluntary" assertion of the right to self-representation). In addition, invocation of the right to self-representation must be "clear and unequivocal." *Frazier-El*, 204 F.3d at 558 (citing *Faretta*, 422 U.S. at 835). This requirement assists trial courts navigating the "thin line between improperly allowing the defendant to proceed *pro se* . . . and improperly having the defendant proceed with counsel." *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (internal quotation marks omitted).

Because the right to representation by counsel has "constitutional primacy" over the right to self-representation, it represents the "default position." *United States v. Singleton*, 107 F.3d 1091, 1096, 1102 (4th Cir. 1997). Trial courts may "safely . . . presume that the defendant should proceed with counsel absent an unmistakable expression by the defendant that so to proceed is contrary to his wishes." *Fields*, 49 F.3d at 1029.

Because Mr. Mabe did not clearly and unequivocally invoke his right to self-representation, the North Carolina Court of Appeals' adjudication of this claim was not contrary to and did not involve an unreasonable application of clearly established federal law—namely, *Faretta*. Nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the Court of Appeals' adjudication should not be overturned.

5

## 2. Jury Instructions

Mr. Mabe's second contention is that the trial court incorrectly denied his requested jury instruction on felony auto theft, which he contends is a lesser-included offense of larceny to a motor vehicle, and that this failure violated his due process rights.

Mr. Mabe's claim that the state court violated federal law on lesser-included offense instructions is barred by the requirement in 28 U.S.C. § 2254(d)(1) that the state court decision at issue be inconsistent with "clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has held that in capital cases, due process requires a jury instruction on a lesser-included offense when there is sufficient evidence to support a conviction for that offense. *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980). However, the Supreme Court has never extended this rule to non-capital cases. Because Mr. Mabe was tried non-capitally, he had no clearly established constitutional right to an instruction on a lesser-included offense. Deciding this claim in Mr. Mabe's favor would require enunciating and retroactively applying a new rule in contravention of both the anti-retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288 (1989) (barring retroactive application of a new constitutional rule of criminal procedure on habeas review unless one of two narrow exceptions applies), and the "even more stringent" anti-retroactivity formulation contained in § 2254(d)(1). *See Weeks v. Angelone*, 176 F.3d 249, 266 n.9 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

To the extent Mr. Mabe alleges that the trial court violated state law on lesser-included offense instructions, he must show on federal habeas review that any error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (internal quotation marks omitted). In North Carolina, if "the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to

any element of the charged crime," then "the court is not required to submit to the jury the question of defendant's guilt of a lesser degree of the crime charged." *State v. Green*, 305 N.C. 463, 477-78, 290 S.E.2d 625, 634 (1982). In the specific context of automobile theft, "[w]here all the evidence tends to show that defendant intended to permanently deprive the victim of her car, it would be improper for the court to instruct on unauthorized use of a conveyance." *State v. McRae*, 58 N.C. App. 225, 229, 292 S.E.2d 778, 781 (1982). Here, Mr. Mabe's contentions that there was insufficient evidence to establish his intent to deprive Ms. Willard of her car permanently and that there was conflicting evidence on that issue fail for the reasons given by the North Carolina Court of Appeals. *See Mabe*, 2010 WL 2652254, at *3-4. The trial court's refusal to instruct the jury on the lesser-included offense was not error, much less error so infecting the trial as to violate due process.

### 3. Use of Prior Convictions

Mr. Mabe further contends that his prior convictions older than ten years were erroneously used to calculate his sentence after the State waived the use of those convictions. Mr. Mabe first raised this claim of error in his first MAR. (Doc. 10-9 at 15-16.) The Superior Court's rejection of this argument, (Doc. 10-11 at 3), is entitled to deference under 28 U.S.C. § 2254(d). *See Harrington*, ___ U.S. at ___, 131 S. Ct. at 785.

North Carolina law does not prohibit the use of convictions more than ten years old to calculate a defendant's prior record level for sentencing purposes. *See* N.C. Gen. Stat. § 15A-1340.11(7) (defining "prior conviction" without regard to age of conviction). In support of his waiver theory, Mr. Mabe points to a document the State filed before trial entitled "Notice of Intention to Use Evidence." (Doc. 10-2 at 17.) The State checked boxes on a standard form indicating its intention to use various pieces of evidence against Mr. Mabe at trial, but did not

7

check the box indicating an intention to use "[e]vidence of conviction over 10 years old." (*Id.*) The form covers the State's various obligations under rules of criminal procedure and evidence to disclose its intent to use certain evidence at trial. Specifically, under North Carolina Rule of Evidence 609(b), parties seeking to introduce evidence of a conviction more than ten years old must "give[] . . . the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." There is no basis for concluding that either Rule 609(b) or the form the State routinely uses to comply with Rule 609(b) extends beyond the use of prior convictions at trial to the use of those convictions to determine prior record level for sentencing purposes. This is especially so since North Carolina's Structured Sentencing Act requires prosecutors to "make all feasible efforts to obtain and present to the court the offender's full record." N.C. Gen. Stat. § 15A-1340.14(f).

The Superior Court's determination that there was no error in the use of Mr. Mabe's prior convictions at sentencing was not unreasonable, and Mr. Mabe is not entitled to relief on this ground.

4. **Ineffective Assistance of Counsel**

Finally, Mr. Mabe asserts that he received ineffective assistance of counsel, specifically alleging that trial counsel: (A) should have moved to suppress incriminating statements Mr. Mabe made to law enforcement; (B) failed to challenge the State's belated disclosure of discovery materials; (C) refused to obtain the testimony of witnesses and other evidence; (D) refused to challenge the State's selective prosecution of Mr. Mabe or to obtain a 911 tape from a prior incident between Mr. Mabe and Ms. Willard; (E) failed to challenge the constitutionality of the gender-based charge of assault on a female; and (F) had a conflict of interest given his

8

relationship with the prosecutor. (Doc. 1 at 10-12.) To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that, but for counsel's deficient performance, there was a reasonable probability of a different result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Mr. Mabe is not entitled to relief on any of the above-noted allegations for a variety of reasons.

First, allegations (A), (D), and (F) are conclusory and unsupported, and therefore must be denied in their entirety. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim—or, for that matter, on any claim—a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165-66 (1996).

Second, Mr. Mabe has not demonstrated the Superior Court's denial on the merits of allegations (A) through (D) was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts in light of the record. 28 U.S.C. 2254(d); *Harrington*, ___ U.S. at ___, 131 S. Ct. at 785. Mr. Mabe raised those claims in his first MAR, (Doc. 10-9 at 3-9), the Superior Court rejected them, (Doc. 10-11 at 2-3), and the Superior Court's decision is entitled to deference.

Mr. Mabe's contention that counsel should have moved to suppress incriminating statements he made upon being arrested fails because the evidence at trial established that the statements were voluntary and were not made in response to any interrogation. The record showed that Mr. Mabe asked a law enforcement officer why he was being arrested, the officer answered the question, and Mr. Mabe then volunteered, "[S]he can break into my house and nothing happens, I break into hers and I get arrested." (Doc. 10-18 at 51.) Mr. Mabe's MAR did

9

not identify any evidence indicating that this statement was involuntary or made in response to police questioning, and he has not identified any such evidence in this Court. Statements given freely and voluntarily by a person under arrest are not the result of interrogation and are therefore outside the scope of Fifth Amendment privilege against self-incrimination. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (explaining that "words or actions on the part of police . . . normally attendant on arrest and custody" do not alone constitute interrogation sufficient to trigger *Miranda* safeguards). As such, Mr. Mabe's statement was not subject to suppression, and trial counsel could not be deemed ineffective for not moving to suppress it.

    Mr. Mabe also contends that trial counsel was ineffective for failing to challenge the State's disclosure of discovery materials one day before trial. Assuming that trial counsel had any state law grounds to challenge such a disclosure, Mr. Mabe has not demonstrated prejudice. First, the record establishes that counsel rigorously contested the admission of several pieces of evidence regarding the relationship between Mr. Mabe and Ms. Willard disclosed by the State in its discovery, (Doc. 10-2 at 20-22, 30-31), and was successful in excluding evidence regarding a prior assault of Ms. Willard by Mr. Mabe. (Doc. 10-17 at 144-53.) Second, there is no reasonable probability that exclusion of the belatedly disclosed evidence would have yielded a different result. There was overwhelming evidence supporting Mr. Mabe's conviction. Ms. Willard's mother was an eyewitness to the events, and she testified in addition to Ms. Willard. Law enforcement officers arrived shortly after the incident, and they testified as to the physical injuries the women had sustained and as to Mr. Mabe's statement, set forth *supra*, admitting he had broken into Ms. Willard's home. A review of the transcript reveals that counsel did a more than adequate job in cross-examining witnesses and challenging their version of events.

Mr. Mabe next contends that trial counsel refused to obtain witnesses and evidence critical to his defense. Specifically, Mr. Mabe points to the evidence contained in two affidavits he submitted with his first MAR. One of the affidavits was from Mark Mabe, who claims to have "witnessed" the relationship between Mr. Mabe and Ms. Willard, (Doc. 10-9 at 22), and the other was from Ruth Williams, Mr. Mabe's mother. (*Id.* at 23-24.) Virtually all of what these affiants swore to was hearsay, irrelevant, or otherwise inadmissible under the rules of evidence. Particularly notable are Ms. Williams's comments regarding Ms. Willard's personal character. Neither affiant had firsthand knowledge of the events at issue, yet their affidavits contain opinion and supposition about those events. Finally, while each affidavit does contain some potentially admissible evidence, that evidence was not necessarily exculpatory. Mark Mabe swore that Mr. Mabe and Ms. Willard fought on the day in question, and Ms. Williams swore that Mr. Mabe admitted to her that he kicked in the door to Ms. Willard's mother's home. Indeed, had testimony from these affiants about the nature of the relationship between Ms. Willard and Mr. Mabe been received, it likely would have opened the door for the State to introduce evidence of the prior assault by Mr. Mabe which trial counsel was successful at excluding.

Finally, Mr. Mabe asserts that his lawyer was ineffective for failing to challenge the State's selective prosecution of Mr. Mabe based upon the fact that the State charged him for unlawful entry of Ms. Willard's mother's house, but did not charge Ms. Willard for unlawfully entering his house. Mr. Mabe notes that counsel could have used the tape of the 911 call he made when Ms. Willard unlawfully entered his house to prove selective prosecution. Mr. Mabe has proffered no evidence of a discriminatory prosecutorial motive, which is necessary along with a discriminatory effect, to support a claim of selective prosecution in North Carolina. *See State v. Garner*, 340 N.C. 573, 588, 459 S.E.2d 718, 725 (1995) (citing *Wayte v. United States*,

11

470 U.S. 598 (1985)). Because trial counsel cannot be deemed ineffective for failing to raise a meritless objection, Mr. Mabe's contention fails.

None of the alleged instances of ineffective assistance of counsel meet the *Strickland* test. The state court did not make any unreasonable applications of federal law in its decisions on Mr. Mabe's MAR.

Regarding Mr. Mabe's claims that trial counsel was ineffective because he failed to challenge the constitutionality of the charge of assault on a female and had a conflict of interest, Mr. Mabe asks in a separate motion to amend his § 2254 petition to withdraw these arguments because they have not been exhausted. (Doc. 5.) Mr. Mabe currently has a second MAR pending in the Superior Court raising these issues. (Doc. 10-16.) Because Mr. Mabe moved to amend before Respondents filed a response, he may amend as a matter of course. Fed. R. Civ. P. 15(a). Respondents have no objection to Mr. Mabe's motion to amend. (Doc. 10 at 22.)

## CONCLUSION

For the reasons stated, it is ordered that:

1. The motion to amend to withdraw certain claims of ineffective assistance of counsel, (Doc. 5), is **GRANTED**.

2. The remaining claims in the § 2254 petition are without merit and Respondents' motion for summary judgment, (Doc. 8), is **GRANTED**. The Petitioner's Request for an Evidentiary Hearing (Doc. 15) is **DENIED**.

This the 7th day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE

12